Robert D. SEIBLE, Plaintiff–Appellant,

v.

The **DENVER POST CORPORATION,** publisher of The Denver Post; Jane Marshall, individually and as an editor of The Denver Post; and Claire Martin, individually and as a reporter for The Denver Post, Defendants–Appellees.

No. 87CA1765.

Colorado Court of Appeals, Div. III.

Feb. 2, 1989.

Rehearing Denied April 13, 1989.

Certiorari Denied Nov. 27, 1989.

Linda S. Lodenkamper, Denver, for plaintiff-appellant.

Gibson, Dunn & Crutcher, George B. Curtis and David Schieferstein, Denver, for defendants-appellees.

Opinion by Judge FISCHBACH.

In this libel action, plaintiff, Robert D. Seible, appeals from a summary judgment entered in favor of the defendants, the Denver Post, its reporter Claire Martin, and its editor Jane Marshall. Seible contends the trial court erred in concluding that he failed to present clear and convincing evidence establishing a *prima facie* case of defamation. We affirm.

This litigation arises out of a newspaper article which quoted certain comments made by Dale Coski, an advisor for the Denver Commission on the Disabled, regarding a petition submitted to the Commission by Seible, a freelance draftsman. Seible alleged in his complaint that the article falsely implied that he had deceived the Commission in an attempt to evade the handicapped-accessibility requirements under the Denver Building Code.

The alleged defamation was contained in a feature story Martin wrote about Coski, a former Denver police officer who became a quadriplegic after sustaining severe injuries in a work accident in 1983. Entitled "Starting Over," the story was a detailed account of Coski's retirement from the police force, her extensive rehabilitation, and her new career working as an advisor for

the Commission on the Disabled. Coski's duties at the Commission included reviewing and making recommendations on requests for the waiver of handicapped-accessibility requirements under the Denver Building Code.

In June 1985, Seible submitted a waiver petition on behalf of The Remnant Church of God in Christ, Inc. The original church building predated the building code's handicap accessibility requirements; however, the Church proposed to build an addition for which compliance with the handicap requirements was necessary. The waiver petition prepared by Seible stated in relevant part:

"Subject: Building Addition & Remodel of Existing Church Building. Chapter 64 of the Denver Building Code requires 2 handicapped entrance and egress points for the building in question, *for which we are in compliance.* However, the code requires that one should be the primary entry and for this we are requesting the waiver. Though a ramp could possibly be located at the primary entry, (north side), it would be of cumbersome design ... [and] would terminate into the parking lot. *One ramped entry (East Side) terminates at the parking lot, already.* As indicated on the attached prints, we request that we be permitted to construct a ramp on the west side ... *opposite the east ramped entry.*" (emphasis added)

Although the use of the present tense in the emphasized portions of the petition suggests that the Church was already in compliance with the handicap requirements, Seible claims he intended for the petition to be read in conjunction with the blueprints and to be understood as a description of the planned construction rather than of the existing structure.

Coski, however, testified in a deposition that the blueprints were not affixed to the petition, as indicated, and that she was unable to locate the prints at the time she examined the petition. On June 19, 1985, Coski, accompanied by reporter Martin, went to the Church to conduct an on-site inspection. The two observed that, contrary to the description in the petition,

there was no ramped entrance on the east side of the Church. Coski thereupon made several comments to Martin, accurately reported in the article, expressing her concern about the misstatement in the petition.

That same day, after learning of the site inspection, Seible contacted both Coski and Martin. He advised them that his statement in the petition, referring to an existing ramp on the east side of the Church, was actually a reference to the proposed ramp contained in the blueprints. He further stated that he would submit a revised petition, along with the blueprints, to the Commission.

Coski received the revised petition and the blueprints sometime prior to publication of the article, but neither Coski nor Martin reviewed Seible's blueprints prior to the article's publication. The feature story on Coski was published on July 7, 1985, and included the following references to the waiver application submitted by Seible:

"The church wanted a waiver on a wheelchair ramp for the main entrance, promising instead to put a ramp opposite an existing handicapped-access door on the east side of the building.

"When Coski [found no such existing door on the site, she said,] 'Well, we got a good one here.... If you don't check 'em out, they'll get away with it. That's what this job's for.'

"When Seible was confronted with the misleading wording in the waiver request, ... he responded with alarmed alacrity.... As for the waiver request's claim that one ramped entry already existed, he said that he 'must have made a misstatement there.' He meant that they wanted to build a ramp there, he explained, adding, 'There was absolutely no attempt at deceit. That would be ridiculous.'

"A few days later, Seible wrote a new waiver request and brought it to Coski. She thinks she will probably approve it, depending on the blueprints and evidence of his sincerity about actually building the ramps. There have been a few other attempts to elude the handicapped-accessibility requirement, 'but this was the first time where it was so bad on a request application,' Coski said."

Seible then filed this action seeking actual and punitive damages for defamation. The defendants moved for summary judgment, asserting that the alleged defamatory statements were true, absolutely privileged, and made without malice. The trial court granted the motion, determining that the alleged defamation was qualifiedly privileged and that there was no proof of actual malice to overcome the privilege.

## I.

Seible contends that the trial court erred in dismissing his claim on summary judgment. We find no error.

In *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the Supreme Court held that under the First and Fourteenth Amendments a public official may not recover damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with actual malice. In subsequent cases, the court extended the protection to speech regarding public figures about matters of public concern, *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), and then ruled that individual states could "define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

■ Our supreme court has elected to extend the constitutional protection to "any discussion involving matters of public concern, irrespective of the notoriety or anonymity of those involved." *Diversified Management, Inc. v. Denver Post, Inc.*, 653 P.2d 1103 (1982). Therefore, publications which concern either a public figure *or* a matter of public concern are constitutionally protected, and a showing of actual malice is necessary to defeat the protection and make a defamatory publication actionable. *Diversified Management, Inc. v. Denver Post, Inc., supra; Reddick v. Craig*, 719 P.2d 340 (Colo.App.1985).

This enhanced protection is sometimes called a qualified privilege, as it is analogous to the privilege accorded public officials to protect their own speech. *See New York Times, supra; see also* W. Prosser, *Torts* 792, 819–823 (4th ed. 1971).

The trial court determined that even if the statements regarding Seible were defamatory, which it doubted, they were constitutionally protected because they involved a matter of public concern. It accordingly granted summary judgment because Seible made no showing that the statements were published with actual malice.

Seible does not dispute on appeal that the statements involved a matter of public concern, the enforcement of handicapped-accessibility requirements. Rather, he asserts that a genuine issue of material fact exists as to whether the defendants published the alleged defamatory statements with actual malice. We disagree.

■ To establish malice, plaintiff must show with convincing clarity, that is, produce clear and convincing evidence, that the defamation was published with actual knowledge of its falsity or in reckless disregard for its truth or falsity. *St. Amant v. Thompson*, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968); *DiLeo v. Koltnow*, 200 Colo. 119, 613 P.2d 318 (1980). Reckless disregard exists when the defendant, in fact, entertained serious doubts about the truth of his publication. *St. Amant v. Thompson, supra; Burns v. McGraw–Hill Broadcasting Co.*, 659 P.2d 1351 (Colo. 1983). Because the threat of protracted litigation could have a chilling effect upon constitutionally protected rights of free speech, summary judgment is particularly appropriate in this kind of case. *DiLeo v. Koltnow, supra.*

■ Viewing the evidence de novo as required by *Reddick v. Craig, supra*, and in the light most favorable to Seible, we agree with the trial court that insufficient evidence was set forth to show malice with convincing clarity. The record and Seible's trial court brief reveal four alleged facts to support a finding of malice by the defendants: (1) before publication of the article, Seible informed both Martin and Coski that he had not intended to suggest that a ramp

already existed; (2) the blueprints, intended as an integral part of the petition, revealed that both ramps were proposed rather than extant; (3) the defendants failed to pursue available sources of corroboration for Seible's explanation, including review of the blueprints; and (4) the defendants failed to publish known exculpatory information.

Martin's failure to write the article differently after Seible's explanation of what he concedes to have been a "misstatement" in the petition does not show malice. The explanation neither altered the fact that the misstatement was made nor caused Martin to know or to entertain serious doubts that Seible initially intended no misrepresentation. "A reporter is not required to accept denials of wrongdoing as conclusive, or to prefer them over apparently creditable accusations." *Westmoreland v. C.B.S.*, 596 F.Supp. 1170 (S.D.N.Y. 1984); *see Edwards v. National Audubon Society*, 556 F.2d 113 (2d Cir.), *cert. denied*, 434 U.S. 1002, 98 S.Ct. 647, 54 L.Ed.2d 498 (1977).

Nor does the fact that the blueprints could have clarified the petition impute malice to the defendants. It is undisputed that the blueprints were not attached to the petition, and it is not apparent that the blueprints were an integral part thereof. The sole reference to the blueprints states, "[a]s indicated on the attached prints, we request that we be permitted to construct a ramp on the west side with the nave entry opposite the east ramped entry." This language cannot reasonably be construed as incorporating the blueprints into the waiver petition. Thus, we cannot conclude that Coski and the defendants were reckless in reading and interpreting the petition.

With regard to the adequacy of her investigation, Martin testified in her deposition that she did not review the subsequently submitted blueprints in part because she did not see how such a review would alter what both she and Coski viewed as a fundamental contradiction between the statements contained in Seible's initial waiver petition and the physical evidence they both saw during the site inspection. Although Martin's review of the blueprints might have altered her assessment of the waiver petition, Seible has not shown that Martin's investigation was grossly inadequate. *Cf. Kuhn v. Tribune–Republican Publishing Co.*, 637 P.2d 315 (Colo.1981). Martin reviewed the petition, visited the site, verified the relevant facts with Coski, a public official charged with administering such matters, and spoke with Seible himself on more than one occasion. Malice is not established by a failure to investigate fully all possible sources of corroboration or verification. *St. Amant v. Thompson, supra; see Fink v. Combined Communications Corp.*, 679 P.2d 1108 (Colo.App.1984); *Murray v. Bailey*, 613 F.Supp. 1276 (N.D.Cal.1985).

Seible's contention that the defendants showed malice in failing to publish known exculpatory information is not supported by the evidence. Martin did, in fact, provide in her article Seible's explanation for the misstatement.

The record reflects that defendants conducted an adequate investigation, verified the information obtained from Coski, and never, in fact, "entertained serious doubts" as to the truth of the article. *St. Amant v. Thompson, supra.* Accordingly, we agree with the trial court that plaintiff failed to establish actual malice with convincing clarity and that defendants were entitled to summary judgment.

## II.

We further conclude as a matter of law that the Post article contained constitutionally protected expressions of opinion.

■ A defamatory opinion is constitutionally protected and may not be the subject of a private defamation action provided that the truthful facts supporting the opinion are set forth. *Brooks v. Paige*, 773 P.2d 1098 (Colo.App.1988). Whether a particular statement constitutes a fact or an opinion depends on the factual context of the publication and all the circumstances surrounding the statement. *Burns v. McGraw–Hill Broadcasting Company, Inc.*, 659 P.2d 1351 (Colo.1983). The determination of whether a statement constitutes fact or opinion is a question of law. *Brooks v. Paige, supra.*

■ We conclude that the remarks attributable to Coski, including any innuendo

that Seible was attempting to evade the handicap regulations, constitute privileged statements of opinion. Coski's reaction to the petition, as related in the article, was based on the assertion in the petition that "[o]ne ramped entry (East) terminates at the parking lot, already" and the fact that, upon conducting a site inspection of the Church, Coski found that no such ramp existed. Because the bases for the remarks were disclosed, the alleged defamation is not actionable.

Defendants also contend that the article was absolutely privileged as a "fair report," which privilege is described in the Restatement (Second) of Torts § 611 (1977). Because of our disposition of the case under constitutional standards, we do not reach this question.

The judgment is affirmed.

KELLY, C.J., and NEY, J., concur.