203 P.3d 609 (2008)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Ivan A. GONZALES-QUEVEDO, Defendant-Appellant.
No. 05CA2434.
Colorado Court of Appeals, Div. V.
October 30, 2008.
*610 John W. Suthers, Attorney General, Roger G. Billotte, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee.
Law Offices of Ingrid J. DeFranco, Ingrid J. DeFranco, Louisville, Colorado, for Defendant-Appellant.
Opinion by Judge GABRIEL.
Defendant, Ivan A. Gonzales-Quevedo, appeals the judgment of conviction entered on jury verdicts finding him guilty of first degree murder after deliberation, criminal attempt to commit first degree murder after deliberation, and accessory to a crime. We affirm.

I. Background
On March 23, 1998, defendant, his cousin, and several others were involved in an altercation with another group of men, including the two victims here, one of whom was shot to death and the other of whom was shot and seriously wounded. The shootings occurred when defendant drove a van, occupied by his cousin and others, into an alley and the car in which the victims were riding followed. One occupant got out of the car and approached the driver's side of the van. An occupant of the van (the evidence was disputed as to who it was) then pointed a gun at this man. The man shouted that there was a gun, and the occupants of the car began to retreat on foot. The prosecution's evidence showed that defendant then got out of the van and shot one of the men who had been in the car in the leg. Defendant's cousin then got out of the *611 van and shot this victim in the neck and face, seriously wounding him.
Defendant and his cousin then returned to the van, at which point one of the van's occupants (again, the evidence was disputed as to who) pointed a gun out of the passenger side window and shot another man who had been in the car in the knee. The prosecution's evidence was that defendant's cousin then got out of the van, walked over to this second victim, and shot him in the head, killing him.
As a result of this incident, defendant was tried and convicted of the first degree murder of the second victim, the attempted murder of the first victim, and accessory to a crime. Defendant appealed, and a division of this court affirmed the trial court's judgment. People v. Gonzales, (Colo.App. No. 99CA1619, June 7, 2001) (not published pursuant to C.A.R. 35(f)). Thereafter, defendant filed a Crim. P. 35(c) motion, arguing, among other things, that the jury had not been instructed on the issue of reasonable doubt. The prosecution conceded error, and the trial court ordered a new trial. Defendant was again convicted on all counts, and now appeals.

II. Admissibility of Antisocial Personality Disorder Evidence
Defendant asserts that the trial court impermissibly chilled his constitutional right to present a defense by entering an order that would have allowed the prosecution to present allegedly irrelevant and unfairly prejudicial evidence that defendant suffered from Antisocial Personality Disorder (APD). We disagree.

A. Mental Health Evidence
Prior to the retrial, a psychologist diagnosed defendant with post-traumatic stress disorder (PTSD), caused by defendant's having witnessed his mother shoot his father at close range when defendant was eight years old. The psychologist opined that gunshots, blood, and sirens at the time of the incident in question caused defendant "to enter a panicked and confused state of mind in which he was unable to think clearly or to exercise adult judgment." The psychologist further concluded that flashbacks rendered defendant "unable to formulate or weigh alternatives" and "unable to make a reasoned decision about an appropriate course of action."
The prosecution moved in limine to preclude the psychologist's testimony, arguing that it was irrelevant and inadmissible because defendant had not entered a plea of not guilty by reason of insanity (NGRI). Defendant responded that he could introduce evidence of his mental capacity to act "after deliberation" without having to plead NGRI because at the time the crime was committed, "after deliberation" was not part of the culpable mental state for first degree murder. The trial court rejected defendant's argument and denied his motion. As a result, defendant pleaded NGRI.
Based on defendant's plea, the prosecution prepared to call a psychiatrist to testify as to defendant's mental state. Specifically, the psychiatrist planned to testify that defendant did not suffer from PTSD but rather suffered from APD, which would not have prevented him from forming the requisite mental state. Defendant objected to such evidence, arguing that (1) it was irrelevant because it did not rebut evidence that he suffered from PTSD, and (2) it would be unfairly prejudicial because it would result in the admission of testimony regarding defendant's criminal history.
The court overruled defendant's objection but noted that, per the parties' agreement, it would instruct the jury that the testimony of the prosecution's psychiatrist would be "admissible only as to the issues raised by the defendant's plea of [NGRI], which bear upon his capacity or incapacity to form culpable mental states." In light of this ruling, defendant chose to withdraw his insanity defense.

B. Analysis
A defendant has a constitutional right to present a defense, including the right to call witnesses on his or her behalf. People v. Kreiter, 782 P.2d 803, 805 (Colo. App.1988). When "the trial court erroneously rules on an evidentiary matter and thereby causes the defendant to refrain from presenting a defense, the ruling can cast `an *612 impermissible chill on the defendant's freedom of decision.'" Id. (quoting People v. Salazar, 44 Colo.App. 242, 246, 610 P.2d 1354, 1357 (1980), overruled on other grounds by People v. Shoffner, 627 P.2d 246, 246-47 (Colo.1981)).
The trial court has substantial discretion in deciding questions concerning the admissibility of evidence, and its evidentiary rulings will be affirmed absent an abuse of that discretion. People v. Quintana, 882 P.2d 1366, 1371 (Colo.1994). A trial court's decision may be upheld on any ground supported by the record, even if that ground was not articulated or considered by the trial court. Id.
Here, we first conclude that the prosecution's APD evidence was relevant. Defendant initially pleaded NGRI in this case. Section 16-8-101.5, C.R.S.2008, provides, in relevant part, that an insane person is defined as a "person who suffered from a condition of mind caused by mental disease or defect that prevented the person from forming a culpable mental state that is an essential element of a crime charged." § 16-8-101.5(1)(b), C.R.S.2008. Section 16-8-101.5(2)(b) states, "`Mental disease or defect' includes only those severely abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality ... but does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct." § 16-8-101.5(2)(b), C.R.S.2008 (emphasis added). Accordingly, by definition, proof that a defendant suffered only from APD is relevant to rebut a defense of NGRI. Cf. Arnold v. Commonwealth, 192 S.W.3d 420, 425 (Ky.2006) (holding that testimony regarding the defendant's APD was proper rebuttal evidence because it countered his defense of voluntary intoxication and impaired abstract reasoning ability). Moreover, the prosecution's rebuttal of a defendant's insanity defense is not limited solely to presenting evidence that directly disproves the disorder claimed by the defendant, as defendant here contends. Rather, the prosecution may properly present alternative explanations of a defendant's behavior. See Harris v. State, 84 P.3d 731, 746 (Okla.Crim.App.2004) (stating that where the defendant claimed he was unable to form a specific intent to kill, the prosecution was entitled to offer alternative explanations for defendant's behavior, including psychopathy).
We further conclude that the prosecution's APD evidence here was not unfairly prejudicial. Several courts have found, in circumstances like those present here, that an expert may testify regarding a defendant's prior antisocial behavior where such activities formed the basis for the expert's opinion. See United States v. Madrid, 673 F.2d 1114, 1122 (10th Cir.1982); United States v. Bell, 500 F.2d 1287, 1289 (2d Cir. 1974). In United States v. Madrid, 673 F.2d at 1122, for example, the Tenth Circuit upheld the trial court's decision to admit evidence of a defendant's prior robberies, which he allegedly committed to support his drug addiction. In that case, the evidence of the defendant's prior crimes and drug use was integral to an expert's opinion regarding the defendant's sanity. Moreover, the trial court had instructed the jury only to consider the evidence of prior criminal activity insofar as it related to the formation of the expert's opinion. Id. Notably, the Tenth Circuit upheld the trial court's admission of this evidence even though it had found that (1) the evidence was prejudicial and (2) the probative value of the evidence was diminished by the absence of proof of drug addiction or use in the relevant time period and by the fact that the expert's opinion would have been the same, though less forceful, had the defendant not had a history of drug addiction and robbery convictions. Id.
The analysis in Madrid is instructive here. In this case, as in Madrid, although evidence of defendant's past crimes was prejudicial, we cannot conclude that the trial court abused its discretion in finding that the probative value of the psychiatrist's opinion, based in part on the fact of defendant's criminal history, was not substantially outweighed by the dangers of unfair prejudice. Like the expert's testimony regarding the defendant's prior antisocial behavior in Madrid, defendant's criminal record here was central to the psychiatrist's APD diagnosis. Moreover, the parties here had agreed that the court would instruct the jury to consider this evidence *613 only as it related to defendant's sanity defense. Finally, there were no particular facts diminishing the probative value of the evidence here, as there were in Madrid.
For these reasons, we conclude that the trial court did not abuse its discretion by allowing the prosecution to introduce evidence that defendant suffered from APD.

III. "After Deliberation"
Defendant next contends that the trial court erred by denying his motion to present evidence of his mental state without pleading NGRI. We reject defendant's contention.
Defendant's argument is premised on his assertion that, under the law in effect at the time the crime was committed, "after deliberation" was not considered part of the requisite mens rea for first degree murder. See People v. Orona, 907 P.2d 659, 663 (Colo.App. 1995), disapproved of by People v. Harlan, 8 P.3d 448 (Colo.2000). Although, in People v. Harlan, 8 P.3d at 475, the Colorado Supreme Court disapproved of Orona and determined that "after deliberation" is in fact part of the culpable mental state for first degree murder, defendant claims that Harlan cannot be applied retroactively because it was not foreseeable. Defendant therefore argues that he should have been permitted to introduce evidence that he suffered from PTSD without having to plead NGRI and, thus, without opening the door to the prosecution's evidence regarding APD. We are not persuaded because even if Harlan was not foreseeable, which we need not decide here, defendant's evidence was inadmissible absent an NGRI plea.
When a defendant's mental disease or defect renders the defendant incapable of accurately comprehending the surrounding circumstances accurately and making a reasoned decision about an appropriate course of action, or otherwise falls within the statutory definition of insanity, the defendant must plead NGRI to introduce evidence to that effect. See People v. Vanrees, 125 P.3d 403, 408-09 (Colo.2005); People v. Bolton, 859 P.2d 311, 321 (Colo.App.1993), overruled on other grounds by Close v. People, 48 P.3d 528, 541 n. 8 (Colo.2002). As discussed above, section 16-8-101.5(1)(b), in relevant part, defines an insane person as a "person who suffered from a condition of mind caused by mental disease or defect that prevented the person from forming a culpable mental state that is an essential element of a crime charged." Defendant concedes that the culpable mental state for first degree murder at the time the crime at issue was committed was "with intent." Under section 18-1-501(b), C.R.S.2008, "A person acts `intentionally' or `with intent' when his conscious objective is to cause the specific result proscribed by the statute defining the offense."
Here, the record reflects that defendant sought to introduce evidence relating to PTSD to show that he was unable to understand the circumstances surrounding the incident in question or to make a reasoned decision about an appropriate course of action. Moreover, defendant intended to present such evidence not only as it related to deliberation but also as it related to intent. Specifically, this evidence would have tended to show that defendant could not have formed the "conscious objective" to cause the death of the victim here and that he thus lacked the requisite intent for first degree murder. Cf. State v. Bottrell, 103 Wash.App. 706, 14 P.3d 164, 169-70 (2000) (holding that evidence that a defendant suffered from PTSD may have negated the culpable mental state for first degree premeditated murder, as well as for second degree murder, which requires intent but not premeditation, where studies by the American Psychiatric Association showed that a person who experiences a PTSD-induced flashback might be unable to control his or her actions and where an expert testified that the defendant's PTSD-induced flashbacks impaired his ability to act with intent).
For these reasons, even prior to Harlan, defendant's proffered evidence tended to show that he was incapable of accurately comprehending the surrounding circumstances accurately and of making a reasoned decision about an appropriate course of action and otherwise fell within the statutory definition of insanity. Accordingly, the trial court did not err in denying defendant's motion *614 to present evidence of his mental state without pleading NGRI.

IV. Exclusion of Gang Affiliation Evidence
Finally, defendant contends that the trial court's ruling prohibiting him from cross-examining the prosecution's witnesses regarding their gang affiliation violated his Sixth Amendment confrontation rights. We disagree.

A. Evidence of Gang Affiliation
At trial, the surviving victim testified on direct examination by the prosecution that he was not a gang member and that the deceased victim and the others who had been in the car were all from different gangs. On cross-examination, however, when defense counsel asked if it was true that everybody in the car on the date in question was a member of "the gang," the surviving victim answered that they were. When defense counsel then asked him whether he had previously told police that he was a member of the Sureños 13 gang, the prosecution objected on relevance grounds. Defense counsel responded that the question was "both within the scope of the direct examination and under case law in regard to bias," and the court overruled the objection.
After defense counsel asked further questions regarding the surviving victim's gang affiliation, the prosecution objected again, arguing that the evidence was irrelevant and inadmissible under CRE 403. As to this objection, the trial court asked defense counsel for an offer of proof.
Counsel's offer of proof suggested, albeit without any specifics, that the gang-related evidence might possibly show bias, that gang members tend to back each other up, and that there was a history of bad blood between the parties. The court repeatedly pressed defense counsel to be more specific and gave counsel a full opportunity to make whatever offer of proof he wanted to make. After hearing from both parties, the court sustained the prosecution's objection, concluding that the proffered evidence of gang affiliation was collateral and not relevant under CRE 402 and was "being used with a broad brush by the defense." The court further stated that "even if there was any conceivable probative value" in such evidence, it was "substantially outweighed by the danger of unfair prejudice as noted in Rule 403, particularly regarding confusion of the issues." The court did, however, make clear that it would permit defendant to introduce evidence of the bad blood between the parties and other specific evidence showing bias.
Thereafter, defendant introduced evidence showing the bad blood between the parties, as well as evidence showing that gang members tend to back one another up. In addition, defendant introduced evidence that at least one prosecution witness changed his testimony due to his fear of the men who had been in the car during the incident in question, several of whom were prosecution witnesses. Defendant was also permitted to introduce evidence that one of the occupants of the car had threatened defendant's mother and sister at the courthouse and told defendant's four-year-old child, "Your father's going to die."
At several subsequent points in the trial, defendant asked the court to reconsider its ruling regarding the gang-related evidence. In addition, defendant submitted a lengthy written offer of proof reaffirming and elaborating on his prior oral offer. The court, however, reaffirmed its initial ruling.

B. Analysis
A criminal defendant has a constitutional right under the Confrontation Clause of the United States Constitution to cross-examine witnesses testifying for the prosecution. People v. Ray, 109 P.3d 996, 1002 (Colo.App.2004). Thus, "it is constitutional error to limit excessively a defendant's cross-examination of a witness regarding the witness' credibility, especially cross-examination concerning the witness' bias, prejudice, or motive for testifying." Merritt v. People, 842 P.2d 162, 167 (Colo.1992). A trial court, however, has "wide latitude, insofar as the Confrontation Clause is concerned, to place reasonable limits on cross-examination based on concerns about, for example, harassment, prejudice, confusion of the issues, the witness' *615 safety, or interrogation which is repetitive or only marginally relevant." Id. at 166.
In light of the foregoing principles, various courts have held that gang membership may be admissible to show bias. For example, in United States v. Abel, 469 U.S. 45, 52, 105 S.Ct. 465, 469, 83 L.Ed.2d 450 (1984), the United States Supreme Court concluded that because testimony concerning a witness' gang affiliation makes the existence of the witness' bias toward the defendant more probable, such testimony is relevant to support that inference. The Court further stated that "[a] witness' and a party's common membership in an organization, even without proof that the witness or party has personally adopted its tenets, is certainly probative of bias." Abel, 469 U.S. at 52, 105 S.Ct. at 469. Similarly, in People v. James, 117 P.3d 91, 94 (Colo.App.2004), a division of this court held that evidence regarding gang culture and evidence of gang retaliation, including the fear thereof, are admissible to explain, among other things, a witness' change in statement or reluctance to testify.
Applying these principles to the present case, we conclude that the trial court did not excessively limit the cross-examination of prosecution witnesses, and, thus, we perceive no constitutional error here. Contrary to defendant's assertions, the trial court admitted substantial testimony regarding the prosecution witnesses' gang affiliations. For example, evidence on the record tended to show that (1) the occupants of the car were members of a single gang; (2) there was bad blood between the car's occupants, on the one hand, and defendant and his cousin, on the other; (3) gang members tend to back up one another; (4) at least one witness altered his testimony because he was afraid of the occupants of the car; and (5) one of the occupants of the car had threatened members of defendant's family. To the extent that the court limited defendant's ability to inquire into the other topics noted in his various offers of proof, defendant's proffers as to those subjects were speculative and conclusory at best, and the court did not abuse its discretion in precluding such inquiries. See People v. Estep, 196 Colo. 340, 345-46, 583 P.2d 927, 930-31 (1978).
For these same reasons, we conclude that the trial court did not abuse its discretion in determining that the probative value of the proffered evidence was not substantially outweighed by the dangers of unfair prejudice, confusion of the issues, misleading the jury, or needless presentation of cumulative evidence under CRE 403. See Ray, 109 P.3d at 1001-02 (stating that a trial court's ruling on a Rule 403 objection is reviewed for abuse of discretion).
In reviewing a trial court's ruling on a CRE 403 objection, we afford the evidence its maximum probative value and the minimum reasonable prejudicial effect. People v. Webster, 987 P.2d 836, 840 (Colo.App.1998). Here, to the extent the trial court precluded defendant from making certain inquiries as to gang-related matters, as noted above, the excluded evidence went to matters of pure speculation having minimal, if any, probative value. Conversely, as the trial court observed, the danger of confusion and prejudice arising from such evidence was substantial.
The judgment of the trial court is affirmed.
Judge VOGT and Judge RUSSEL concur.