The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
February 18, 2021

## 2021COA19

**No. 18CA0598, *People v. Snider* — Crimes — Obstructing a Peace Officer — Assault in the Second Degree — Resisting Arrest; Criminal Law — Prosecution of Multiple Counts for Same Act — Lesser Included Offenses**

A division of the court of appeals holds that the unit of prosecution for obstruction of a peace officer, § 18-8-104, C.R.S. 2020, is defined in terms of discrete volitional acts, not the number of officers involved. The division further concludes that resisting arrest under section 18-8-103(1)(a), C.R.S. 2020, is a lesser included offense of second degree assault on a peace officer under section 18-3-203(1)(c), C.R.S. 2020.

Court of Appeals No. 18CA0598
Adams County District Court No. 16CR1763
Honorable Robert W. Kiesnowski, Jr., Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Adam Taft Snider,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART, VACATED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE TOW
Dailey and Berger, JJ., concur

Announced February 18, 2021

Philip J. Weiser, Attorney General, Gabriel P. Olivares, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Sarah Spears, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Adam Taft Snider, appeals his judgment of conviction entered on jury verdicts finding him guilty of second degree assault, resisting arrest, and obstruction of a peace officer. We affirm Snider's assault and obstruction convictions, but we vacate his conviction for resisting arrest. In doing so, we address two matters of first impression.

¶ 2     First, we conclude that the unit of prosecution for obstruction of a peace officer is legislatively defined in terms of discrete volitional acts, not by the number of officers involved. Thus, we conclude that, as to Snider's obstruction charge, the jury was not required to unanimously agree that he had obstructed a particular peace officer, only that he had obstructed *any* officer. Accordingly, we reject Snider's contention that he was denied his right to a unanimous verdict.

¶ 3     Second, we conclude that resisting arrest under section 18-8-103(1)(a), C.R.S. 2020, is a lesser included offense of second degree assault under section 18-3-203(1)(c), C.R.S. 2020, which, for ease of reference, we shall call second degree assault on a peace

officer.[1]  Because the trial court plainly erred by failing to merge

Snider's conviction for resisting arrest into the second degree

assault on a peace officer conviction, we vacate his resisting arrest

conviction.

## I.    Background

¶ 4      According to the evidence presented at trial, Deputies Lonn

Trail and Andrew Martinez were dispatched to Snider's home for a

well-being check in response to a report that Snider was

threatening to harm himself and others.  On the way to the scene,

the deputies learned that Snider had an active arrest warrant.

¶ 5      When the deputies arrived at Snider's home, Snider invited

them inside.  After Snider indicated that he was not suicidal,

Deputy Martinez asked Snider to step out of the home.  Snider then

asked if he was under arrest, at which point Deputy Martinez

grabbed Snider's wrist and confirmed that he was being taken into

---

[1] There are several different subsections of the statute that create some form of the crime of second degree assault on a peace officer. *See* § 18-3-203(1)(c), (c.5), (f), (f.5), (h), C.R.S. 2020.  This case, and particularly our analysis in Part V, involves only subsection (1)(c). We express no opinion regarding whether resisting arrest is a lesser included offense of any other type of second degree assault on a peace officer.

custody.  Snider struggled with the deputy, shook free of his grasp, and ran out of the house.

¶ 6     Deputies Trail and Martinez chased after Snider, joined by Sergeant Manuel Aragon, who had arrived at the scene while the deputies were questioning Snider.  Deputy Trail followed Snider into a nearby backyard, where he found Snider hiding behind a discarded toilet.  He ordered Snider to come out and lie on the ground, and Snider began crawling out from his hiding position.

¶ 7     Instead of complying with Deputy Trail's order, however, Snider lunged toward the deputy's legs in an apparent attempt to tackle him.  Deputy Trail dodged Snider, who picked up a wooden post he found lying on the ground.  He swung it at Deputy Trail, striking him in the ribs.  The deputy was able to pull the post away from Snider, but Snider tackled him to the ground.  The two exchanged punches before Snider again began fleeing the deputy.

¶ 8     Snider attempted to climb over a fence, but Deputy Trail pulled him off, causing them both to fall to the ground.  Snider climbed on top of the deputy and once more began punching him. Deputy Trail fought back and was eventually able to stand up and pin Snider against the fence.  At that point, Sergeant Aragon found

Deputy Trail and helped him restrain Snider. Sergeant Aragon struck Snider, who fell to the ground and indicated that he would comply. The officers then placed Snider in handcuffs and took him into custody.

¶ 9 Snider was charged with second degree assault on a peace officer, criminal mischief, resisting arrest, and obstructing a peace officer. At trial, Snider denied punching, kicking, tackling, or otherwise striking any deputy. Instead, he testified that he was beaten by the deputies without provocation and violently arrested. Nonetheless, a jury convicted Snider of second degree assault on a peace officer, resisting arrest, and obstructing a peace officer, although it acquitted him of the criminal mischief count. The trial court sentenced Snider to three years of probation on the assault charge, with the condition that Snider serve sixty days in jail. On the resisting and obstruction charges, Snider was sentenced to sixty days in jail for each count, to be served concurrently with the jail component of his probation sentence.

4

## II.     Self-Defense Instruction

¶ 10     Snider contends that the trial court erred by declining to instruct the jury on self-defense as to his second degree assault on a peace officer charge.  We disagree.

### A.     Additional Facts

¶ 11     On the second day of trial, defense counsel asked the court for a jury instruction on self-defense, which Snider had endorsed as a potential defense prior to trial.

¶ 12     At the close of evidence, however, the People objected to the jury being instructed on self-defense as to Snider's second degree assault on a peace officer charge.  They argued that because Snider never testified to engaging in conduct that could constitute second degree assault, he was not entitled to raise an affirmative defense to the charge.  Defense counsel countered by arguing that Snider's testimony indicated he may have fought back against the deputies.  Thus, defense counsel argued, there was sufficient evidence to support that Snider acted in self-defense such that a self-defense instruction was warranted.

¶ 13     The trial court rejected defense counsel's argument and agreed with the People.  Relying on *People v. Whatley*, 10 P.3d 668 (Colo.

App. 2000), the trial court concluded that, because Snider denied committing second degree assault, he was not entitled to receive an affirmative defense instruction as to that charge. Thus, while the court instructed the jury on self-defense as to Snider's resisting arrest and obstruction charges, it refused to do so as to his second degree assault on a peace officer charge.

## B. Standard of Review

¶ 14 We review de novo whether a defendant is entitled to a requested self-defense jury instruction. *See People v. Newell*, 2017 COA 27, ¶ 19; *Whatley*, 10 P.3d at 670. In doing so, we consider the evidence in the light most favorable to the defendant. *People v. Wakefield*, 2018 COA 37, ¶ 8.

## C. Applicable Law

¶ 15 A defendant is entitled to a jury instruction on self-defense if there is "some credible evidence" in the record that tends to support each element of the defense. *See People v. Saavedra-Rodriguez*, 971 P.2d 223, 228 (Colo. 1998) (the quantum of evidence necessary to present an affirmative defense is "[s]ome credible evidence"); *People v. Hendrickson*, 45 P.3d 786, 790 (Colo. App. 2001) ("To entitle a defendant to [an affirmative defense] instruction, the supporting

6

evidence must tend to establish each of the elements of the defense.").  The "some credible evidence" standard is "'exceedingly low,' making preclusion of an affirmative defense appropriate only when there is 'simply no evidence . . . in th[e] record' [to support it]."  *People v. Jacobson*, 2017 COA 92, ¶ 15 (quoting *People v. Platt*, 170 P.3d 802, 806 (Colo. App. 2007)).  Indeed, the standard is so low that "the evidence necessary to justify an affirmative defense instruction may come solely from the defendant's testimony, even if the evidence is improbable."  *People v. Johnson*, 2013 COA 122, ¶ 35.  But supporting evidence "may come from any source, even from the prosecution."  *Newell*, ¶ 21 (citing *Whatley*, 10 P.3d at 670).

¶ 16    However, a defendant is not entitled to an affirmative defense instruction if he denies committing the charged crime.  *See, e.g.*, *Hendrickson*, 45 P.3d at 791 (affirming the trial court's denial of an entrapment affirmative defense instruction because the defendant denied committing the charged offense).  Indeed, an affirmative defense, by its nature, "is a defense that admits conduct leading to the act charged but seeks to justify, excuse, or mitigate that conduct."  *Whatley*, 10 P.3d at 670.  Thus, a defendant who testifies

must "admit [to] committing acts that would otherwise constitute an offense before being entitled to assert an affirmative defense." *Hendrickson*, 45 P.3d at 791; *see Whatley*, 10 P.3d at 670.

## D. Analysis

¶ 17 In his testimony at trial, Snider repeatedly denied touching Deputy Trail. However, he suggests that other parts of his testimony nonetheless indicated that he may have fought back against the deputy. Thus, he argues that his testimony, though contradictory, provided "some credible evidence" that he acted in self-defense, especially when considered with Deputy Trail's account of the incident. Accordingly, he argues, there was sufficient evidence presented at trial to warrant a self-defense instruction. But because, in our view, Snider never admitted to engaging in conduct that could constitute second degree assault, we disagree that he was entitled to such an instruction. *See Hendrickson*, 45 P.3d at 791; *Whatley*, 10 P.3d at 670.

¶ 18 As an initial matter, our review of the record indicates Snider's characterization of his testimony — that he admitted to possibly fighting back against Deputy Trail — is inaccurate.

¶ 19     In construing his testimony as such, Snider directs us to the following exchange:

> [Prosecutor]: Okay.  So I want to talk specifically about you never put your hands on Deputy Trail, correct?
>
> [Snider]: I'm not going to give 100 percent that I didn't, I don't think I really tried to blocking [sic].  But it's possible that my arm tried to block his leg one or two of the kicks out of the many.

He also cites the following response from later in his testimony:

> [Prosecutor]: So you never had the opportunity to get on top of him and punch him twice in the face?
>
> [Snider]: I can't say that I didn't.  I mean that doesn't mean I didn't have the opportunity.  I was very injured on the ground.  But it's still possibly [sic] I could have tackled him if I wanted to try.

¶ 20     But in our view — considered even in the light most favorable to Snider — neither of these statements suggested that he may have fought back against the arresting deputy.  In the first, Snider at most admitted to possibly touching Deputy Trail with his arm while attempting to block a kick in a defensive posture.  As to the second, Snider only acknowledged that he may have had an opportunity to attack the deputy — "if [he] wanted to try" — not that he had

actually done so.  And Snider's other responses during the same line of questioning further support that he was not admitting to possibly fighting back against Deputy Trail:

> [Prosecutor]: Did you ever punch Deputy Trail?
>
> [Snider]: Definitely not.
>
> [Prosecutor]: Did you ever stand above Deputy Trail after you pushed him on the ground?
>
> [Snider]: I never pushed him on the ground.
>
> [Prosecutor]: Did you ever tackle Deputy Trail?
>
> [Snider]: No.
>
> [Prosecutor]: Did you ever pick up a 4X4 at all in the backyard?
>
> [Snider]: No.

¶ 21    More to the point, though, Snider's testimony did not amount to an admission that he engaged in conduct that led to his second degree assault on a peace officer charge — a prerequisite for him to demand an affirmative defense instruction.  *See Hendrickson*, 45 P.3d at 791; *Whatley*, 10 P.3d at 670.

¶ 22    Indeed, a person commits second degree assault on a peace officer if, "[w]ith intent to prevent one whom he or she knows, or should know, to be a peace officer . . . from performing a lawful

10

duty, he or she intentionally causes bodily injury to any person."
§ 18-3-203(1)(c). But Snider never testified that he caused bodily injury to Deputy Trail, an essential element of the charge. *See id.*
He only acknowledged that it was possible he used his arm to block the deputy, which, in our view, fell short of an admission to causing bodily injury. And Snider continually denied punching, pushing, tackling, or otherwise attacking Deputy Trail so as to cause bodily injury. Thus, Snider never admitted to engaging in conduct that could constitute second degree assault on a peace officer and was thus not entitled to an affirmative defense instruction. *See Hendrickson,* 45 P.3d at 791; *Whatley,* 10 P.3d at 670.

¶ 23    Our decision finds support in *Whatley,* a case with circumstances remarkably similar to those before us. There, a defendant was charged with second degree assault on a peace officer, and, like Snider, elected to testify. *Whatley,* 10 P.3d at 670.
The defendant in *Whatley* testified that he never hit, pushed, kicked, or otherwise struck a peace officer, but he did say that he had "wrestled around" with an officer and "pushed toward" him. *Id.*
Nonetheless, the trial court rejected the defendant's request to give a self-defense instruction, and a division of this court affirmed. *Id.*

11

The division reasoned that it "[could] not conclude that [the defendant's] comments amounted to an admission that defendant by his conduct he [sic] caused injury to the officer." *Id.*

¶ 24     Likewise, here, we cannot conclude that Snider's testimony regarding possibly blocking Deputy Trail constituted an admission to causing bodily injury to the deputy. Thus, Snider was not entitled to an affirmative defense instruction. *See Hendrickson*, 45 P.3d at 791; *Whatley*, 10 P.3d at 670.

¶ 25     Snider argues, however, that his failure to admit to second degree assault did not necessarily preclude him from receiving a self-defense instruction. He relies on *Brown v. People*, 239 P.3d 764, 770 (Colo. 2010), for the proposition that "a criminal defendant who maintains his innocence may receive an inconsistent jury instruction . . . provided there is a rational basis for the instruction in the evidentiary record." *Id.* But Snider's reliance on *Brown* is misplaced; the holding in *Brown* does not extend to affirmative defenses. *See People v. Taylor*, 2012 COA 91, ¶¶ 34, 35, *abrogated on other grounds as recognized by People v. Folsom*, 2017 COA 146M.

¶ 26    In sum, because we conclude Snider was not entitled to an affirmative defense instruction, we discern no error in the trial court's refusal to give such an instruction.

### III.    Motion for Mistrial

¶ 27    Next, Snider contends that the trial court erred by denying his motion for a mistrial based on alleged prosecutorial misconduct. We disagree.

### A.    Additional Facts

¶ 28    During direct examination of Deputy Martinez, the prosecutor began questioning him about his initial contact with Snider. Specifically, the prosecutor asked the deputy to describe Snider's demeanor. In response, the deputy testified that Snider was very cooperative at first and did not show any signs of being stressed. The prosecutor then began to ask, "Was there any indication to you that there was illegal narcotics —" Defense counsel objected, interrupting the prosecutor before he could finish the question. Deputy Martinez never offered a response to the question.

¶ 29    The trial judge sustained the objection and ordered the parties to approach. The judge reprimanded the prosecutor for his attempted question, and defense counsel moved for a mistrial. The

13

judge denied the motion for a mistrial but instructed the jury to disregard the prosecutor's question.

B. Standard of Review and Applicable Law

¶ 30 "Prosecutors have a higher ethical responsibility than other lawyers because of their dual role as both the sovereign's representative in the courtroom and as advocates for justice." *Domingo-Gomez v. People*, 125 P.3d 1043, 1049 (Colo. 2005) (citing *People v. Pautler*, 35 P.3d 571, 579 (Colo. O.P.D.J. 2001)). Because of their unique role, they must "scrupulously avoid comments that could mislead or prejudice the jury." *Id.*

¶ 31 Determining whether a prosecutor's actions constitute misconduct "is generally a matter left to the trial court's discretion." *Id.* Similarly, the trial court has considerable discretion to determine whether a mistrial is warranted. *People v. Tillery*, 231 P.3d 36, 43 (Colo. App. 2009) (citing *People v. James*, 117 P.3d 91, 95 (Colo. App. 2004)), *aff'd sub nom. People v. Simon*, 266 P.3d 1099 (Colo. 2011). Thus, we will not disturb the trial court's denial of a motion for mistrial "absent a clear showing of abuse of discretion and prejudice to the defendant." *People v. Ortega*, 899 P.2d 236, 238 (Colo. App. 1994). The prejudice to the defendant

14

must be "so substantial that its effect on the jury cannot be remedied by any other means." *Tillery*, 231 P.3d at 43. If the trial court gives the jury a curative instruction to remedy possible prejudice, we presume, absent contrary evidence, that the jury understood and followed the instruction. *People v. Tibbels*, 2019 COA 175, ¶ 18 (*cert. granted* June 29, 2020).

## C. Analysis

¶ 32 Snider contends that the prosecutor's question constituted prosecutorial misconduct that caused him sufficient prejudice to warrant a mistrial. We are not persuaded.

¶ 33 The People concede, as they must, that the prosecutor's attempted question was improper. Nevertheless, as noted, the prosecutor was unable to complete his question over defense counsel's objection. And the witness never offered a response. Consequently, contrary to Snider's suggestion, it cannot be said that the prosecutor's question elicited any information, let alone prejudicial information.

¶ 34 Still, Snider argues that the question nonetheless prejudiced him because it invited the jury to speculate as to whether he used illegal narcotics. He also asserts that any prejudice was

compounded by the fact that the jury could interpret counsel's objection, and the bench conference that followed, as an effort to hide facts from the jury. However, in our view, the possible prejudice Snider alludes to — which is speculative in nature — is not substantial enough to warrant a mistrial. *See People v. Ned*, 923 P.2d 271, 275 (Colo. App. 1996) ("Speculation of prejudice is insufficient to warrant reversal of a trial court's denial of a motion for mistrial."). And in any event, Snider does not assert that the jury failed to understand or follow the court's curative instruction to disregard the prosecutor's question. Thus, we presume the jury followed the instruction, curing any potential prejudice. *Tibbels*, ¶ 18.[2]

¶ 35    Because Snider has therefore failed to show that the prosecutor's attempted question "so prejudiced the jury's verdict as to affect the fundamental fairness" of his trial, we cannot conclude

---

[2] Snider points out that curative instructions may not always be sufficient to remedy possible prejudice. *See, e.g., People v. Lee*, 630 P.2d 583 (Colo. 1981). But that is true "only when . . . improper testimony or statements are so prejudicial that, but for the exposure, the jury might not have found the defendant guilty." *People v. Tillery*, 231 P.3d 36, 43 (Colo. App. 2009), *aff'd sub nom. People v. Simon*, 266 P.3d 1099 (Colo. 2011). Such is not the case here.

the prosecutor's misconduct warrants reversal of his conviction. *Domingo-Gomez*, 125 P.3d at 1053.

## IV. Right to a Unanimous Verdict

¶ 36 Snider also contends that the trial court violated his right to a unanimous verdict as to the charges of resisting arrest and obstruction. We disagree.

### A. Additional Facts

¶ 37 The complaint and information set forth the following as to Snider's resisting arrest charge:

> On or about May 27, 2016, Adam Taft Snider unlawfully and knowingly prevented or attempted to prevent Deputy Lonn Trail, a peace officer, acting under the color of his official authority, from effecting the arrest of defendant by using or threatening to use physical force or violence against the peace officer or another; in violation of section 18-8-103, C.R.S.

¶ 38 As to Snider's obstruction charge, the complaint stated as follows:

> On or about May 27, 2016, Adam Taft Snider, by using or threatening to use violence, force, physical interference, or an obstacle, unlawfully and knowingly obstructed, impaired, or hindered the enforcement of the penal law or the preservation of the peace by Deputy Andrew Martinez, a peace officer,

17

acting under color of his official authority; in violation of section 18-8-104(1)(a), C.R.S. [2020].

¶ 39    Thus, the complaint specified that Snider's actions toward Deputy Trail were the basis of his resisting arrest charge, and his actions toward Deputy Martinez were the basis for obstruction. However, at trial, the court did not identify any particular deputy when instructing the jury on either charge.  Instead, it instructed the jury on each crime as follows:

> The elements of the crime of resisting arrest are:
>
> 1. That the defendant,
>
> 2. in the State of Colorado, at about the date and place charged,
>
> 3. knowingly,
>
> 4. prevented or attempted to prevent a peace officer, acting under color of his official authority, from effecting an arrest of the defendant or another,
>
> 5. by using or threatening to use physical force or violence against the peace officer or another[,]

6. and that the defendant's conduct was not legally authorized by the affirmative defense in Instruction 17.[3]

The elements of the crime of obstructing a peace officer are:

1. That the defendant,

2. in the State of Colorado, at about the date and place charged,

3. knowingly,

4. by using or threatening to use violence, force, physical interference, or an obstacle,

5. obstructed, impaired, or hindered,

6. the enforcement of the penal law or the preservation of the peace by a peace officer, acting under color of his official authority, and

7. the defendant's conduct was not legally authorized by the affirmative defense in Instruction 17.

¶ 40    Similarly, the verdict forms did not specify which particular officer Snider was alleged to have resisted or obstructed. Thus, the jury never indicated whether it agreed as to which particular officer Snider resisted or obstructed.

---

[3] The affirmative defense in Instruction 17, self-defense, is not relevant to the issues on appeal.

19

## B. Preservation and Standard of Review

¶ 41 We review de novo whether the trial court violated a defendant's right to a unanimous verdict. *See People v. Simmons*, 973 P.2d 627, 629-30 (Colo. App. 1998) (reviewing the issue de novo). However, Snider concedes, and the record supports, that this issue was not preserved. Thus, if we discern error, we will reverse only if the error is plain. *Hagos v. People*, 2012 CO 63, ¶ 14.

¶ 42 "[P]lain error occurs when there is (1) an error, (2) that is obvious, and (3) that so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Cardman v. People*, 2019 CO 73, ¶ 19. The defendant has the burden of establishing each component. *People v. Boykins*, 140 P.3d 87, 95 (Colo. App. 2005).

¶ 43 An error is obvious if, at the time the issue arose, "it was so clear cut and so obvious that a trial judge should have been able to avoid it without benefit of objection." *People v. Conyac*, 2014 COA 8M, ¶ 54; *accord Cardman*, ¶ 34; *Scott v. People*, 2017 CO 16, ¶ 16. "For an error to be this obvious, the action challenged on appeal ordinarily 'must contravene (1) a clear statutory command;

(2) a well-settled legal principle; or (3) Colorado case law.'" *Scott,* ¶ 16 (quoting *People v. Pollard,* 2013 COA 31M, ¶ 40).

¶ 44 An error so undermines the fairness of the trial such that reversal is warranted if "a reasonable possibility exists that [the error] . . . contributed to [the] conviction." *Cardman,* ¶ 39 (quoting *People v. Lozano-Ruiz,* 2018 CO 86, ¶ 5). Yet "the error must impair the reliability of the judgment of conviction to a greater degree than under harmless error," *Hagos,* ¶ 14, as we will only reverse to correct particularly egregious errors. *See id.* ("[The plain error] standard was formulated to permit an appellate court to correct 'particularly egregious errors . . . .'" (quoting *Wilson v. People,* 743 P.2d 415, 420 (Colo. 1987))).

## C.    Applicable Law and Analysis

¶ 45 In Colorado, a "person who is accused of an offense other than a noncriminal traffic infraction or offense" is entitled to a jury trial. § 16-10-101, C.R.S. 2020. Further, such a defendant is entitled to a unanimous jury verdict. § 16-10-108, C.R.S. 2020; Crim. P.

23(a)(8); Crim. P. 31(a)(3).[4] Snider contends that his right to unanimity was violated because neither the elemental instructions nor the verdict form given by the trial court required the jury to agree as to which particular officer he resisted or obstructed.

¶ 46 "Unanimity means only that each juror agrees that each element of the crime charged has been proved to that juror's satisfaction beyond a reasonable doubt." *People v. Linares-Guzman*, 195 P.3d 1130, 1134 (Colo. App. 2008). Thus, we consider whether the prosecution was required to prove that Snider resisted or obstructed a particular officer.

¶ 47 The question turns on how the units of prosecution for the crimes of resisting arrest and obstruction of a peace officer are legislatively defined. "The unit of prosecution is the manner in which a criminal statute permits a defendant's conduct to be

---

[4] Days after briefing in this appeal was completed, the United States Supreme Court held that a defendant charged in state court with a "serious offense" is constitutionally entitled to a unanimous jury verdict. *Ramos v. Louisiana*, 590 U.S. ___, ___, 140 S. Ct. 1390, 1397 (2020). Neither party filed a notice of supplemental authority, and thus neither addresses whether the charges relevant to this claim are "serious" for purposes of *Ramos*. Because Colorado law already provided that Snider was entitled to a unanimous verdict, we do not address the impact of *Ramos* on this issue.

divided into discrete acts . . . ." *Woellhaf v. People*, 105 P.3d 209, 215 (Colo. 2005). "To determine the unit of prosecution, we look exclusively to the statute." *People v. Arzabala*, 2012 COA 99, ¶ 23. "In construing a statute, we must determine and effectuate the intent of the General Assembly, which we discern when possible from the plain and ordinary meaning of the statutory language." *People v. Lowe*, 2020 COA 116, ¶ 40.

¶ 48     As to the crime of resisting arrest under section 18-8-103(1), a division of this court has determined that the unit of prosecution is defined in terms of discrete volitional acts of resistance. *Lowe*, ¶ 45.

¶ 49     However, as to obstruction of a peace officer under section 18-8-104(1)(a), the unit of prosecution has yet to be identified.

¶ 50     As relevant here, a person commits obstruction of a peace officer if, "by using or threatening to use violence, force, physical interference, or an obstacle, such person knowingly obstructs, impairs, or hinders the enforcement of the penal law or the preservation of the peace by a peace officer, acting under color of his or her official authority." § 18-8-104(1)(a). Notably, to be convicted of obstruction of a peace officer, one does not necessarily

need to harm, or even threaten to harm, a peace officer. Thus, the plain language of the statute indicates that its primary purpose is not to shield peace officers from possible harm, but to facilitate the performance of their duties. And the statute's placement in article 8 of title 18, entitled "Offenses — Governmental Operations," further clarifies that the intent of the statute is to protect governmental operations, not individual peace officers. *See People v. Hickman*, 988 P.2d 628, 645-46 (Colo. 1999) (considering a statute's placement within title 18 as evidence of the legislature's intent). Therefore, like resisting arrest, the unit of prosecution for obstruction must be defined not in terms of the number of officers involved, but in terms of discrete volitional acts of obstruction that interfere with governmental operations. *See People v. McMinn*, 2013 COA 94, ¶ 26.

¶ 51 In sum, then, neither resisting arrest nor obstruction of a peace officer is a victim-based crime, as the unit of prosecution for each is defined in terms of discrete volitional acts rather than the number of officers involved. Thus, even if a defendant's act of resistance or obstruction is directed at multiple officers, a defendant can only be convicted of one count for each act.

Therefore, it follows that to sustain a conviction for either crime, the prosecution only must prove that the defendant committed an act of resistance or obstruction, respectively — to whom the act was directed is irrelevant.

¶ 52     So, as it pertains to Snider's right to unanimity, the People were not required to prove that Snider resisted or obstructed a particular officer, just that he resisted or obstructed *any* officer. That means the jury was not required to unanimously agree on which officer was the target or recipient of his actions. *Linares-Guzman*, 195 P.3d at 1134. Accordingly, even if the jury may not have been in agreement on the matter, Snider's right to unanimity was not implicated.

¶ 53     *Simmons*, to which Snider directs us, does not persuade us otherwise. There, a division of this court held that the trial court erroneously instructed the jury on the elements of felony menacing because the instructions did not identify a specific victim. *Simmons*, 973 P.2d at 630. The instructional error, it reasoned, permitted the jury to convict the defendant of felony menacing without agreement as to who the victim was, which the division concluded violated his right to unanimity. *Id.* However, unlike the

offenses with which Snider was charged, the prohibition against menacing is meant to protect victims from harm; thus, the unit of prosecution for menacing is defined in terms of the number of victims. *See People v. Borghesi*, 66 P.3d 93, 103 n.17 (Colo. 2003) ("[S]eparate victims can form the basis of multiple counts and convictions for the crimes of menacing and reckless endangerment."). We are aware of no authority holding that the jury must unanimously agree that a crime was directed toward a particular victim where, as here, the offense's unit of prosecution is defined not by the identity of the victim (or victims), but by discrete volitional acts.

¶ 54     Still, because neither the jury nor the People identified specific deputies as "victims" of each crime consistent with the charged complaint, Snider argues that a simple variance occurred. *See People v. Rice*, 198 P.3d 1241, 1245 (Colo. App. 2008) ("A simple variance occurs when the charged elements are unchanged, but the evidence proves facts materially different from those alleged in the charging instrument."). Thus, he argues, reversal of his convictions is nonetheless warranted. Because Snider raises this argument for the first time on appeal, we review only for plain error. *Hagos*, ¶ 14.

26

And even if we assume, arguendo, that a simple variance occurred, Snider has offered no explanation as to why it cast serious doubt on the reliability of his conviction. *See Cardman,* ¶ 19 (An error is plain if it "so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction."). Thus, we cannot conclude that Snider has met his burden to establish plain error. *See People v. Vigil,* 127 P.3d 916, 929-30 (Colo. 2006) (the defendant "bears the burden of persuasion" that there was plain error (citing *United States v. Olano,* 507 U.S. 725, 734 (1993))).

## V.  Double Jeopardy

¶ 55  Finally, Snider contends that resisting arrest under section 18-8-103(1)(a) is a lesser included offense of second degree assault on a peace officer. He argues that the trial court plainly erred by failing to merge his resisting arrest conviction into his second degree assault conviction in violation of his double jeopardy rights. We agree. Thus, we vacate the resisting arrest conviction.

### A.  Standard of Review and Applicable Law

¶ 56  The United States and Colorado Constitutions prohibit imposing multiple punishments on a defendant for the same offense

27

unless specifically authorized by the General Assembly. *Page v. People*, 2017 CO 88, ¶ 8 (citing *Woellhaf*, 105 P.3d at 214).

¶ 57 As relevant here, our legislature has determined that a defendant may not be convicted of two offenses for the same conduct if the lesser offense is included in the greater. § 18-1-408(1)(a), C.R.S. 2020. Thus, if a defendant is convicted of both a greater offense and a lesser included offense for the same conduct, the conviction of the lesser must merge into that of the greater. *See Page*, ¶ 9. "Whether convictions for different offenses merge is a question of law that we review de novo." *Id.* at ¶ 6.

¶ 58 Snider argues that resisting arrest is a lesser included offense of second degree assault on a peace officer under two different theories — the "strict elements test" and the test set forth in section 18-1-408(5)(c).

¶ 59 Our supreme court articulated the "strict elements test" to which Snider refers in *Reyna-Abarca v. People*: "[A]n offense is a lesser included offense of another offense if the elements of the lesser offense are a subset of the elements of the greater offense, such that the lesser offense contains only elements that are also included in the elements of the greater offense." 2017 CO 15, ¶ 64.

28

Importantly, though, the supreme court later clarified in *People v. Rock* that "[t]o the extent that a lesser offense is statutorily defined in disjunctive terms, effectively providing alternative ways of being committed, any set of elements sufficient for commission of that lesser offense that is necessarily established by establishing the statutory elements of a greater offense constitutes an included offense." 2017 CO 84, ¶ 16. Thus, to be an included offense, not every alternative way of committing a lesser offense must be contained in the statutory definition of the greater offense; "it is enough that any particular set of elements sufficient for conviction of that offense be so contained." *Id.*

¶ 60 Under section 18-8-103(1)(a), a person commits resisting arrest if he or she (1) knowingly (2) prevents or attempts to prevent a peace officer, acting under color of his official authority, from effecting an arrest of the actor or another, by either (3) using or threatening to use physical force or violence against the peace officer or another.

¶ 61 And, under section 18-3-203(1)(c), a person commits second degree assault if, (1) with intent to prevent one whom he or she knows, or should know, to be a peace officer from performing a

29

lawful duty, he or she (2) intentionally (3) causes bodily injury to any person.

## B. Analysis

### 1. Resisting Arrest is a Lesser Included Offense of Second Degree Assault on a Peace Officer

¶ 62    Comparing the elements of resisting arrest and second degree assault on a peace officer, we agree that the former is a lesser included offense of the latter under the "strict elements test."

¶ 63    First, we address the differing mental states required in each offense. A defendant must act "knowingly" to resist arrest, but the commission of second degree assault on a peace officer requires acting with the specific intent to prevent a peace officer from performing a lawful duty. "If acting knowingly suffices to establish an element, that element also is established if a person acts intentionally." § 18-1-503(3), C.R.S. 2020. In other words, if one has acted "with intent," one has necessarily acted "knowingly." *See* § 18-1-501(5), C.R.S. 2020 (the terms "with intent" and "intentionally" are interchangeable). Therefore, if a defendant commits second degree assault on a peace officer, he has not only

acted "with intent" in trying to prevent an officer's performance of a lawful duty, but he has "knowingly" done so.

¶ 64     Second, we note that effecting an arrest is merely a specific example of a peace officer's performance of a lawful duty. In other words, preventing a peace officer from "effecting an arrest" necessarily prevents that officer from "performing a lawful duty." *See Page*, ¶ 10 ("[A] lesser offense is included in the greater offense when there are multiple ways to commit the greater and proof of the commission of at least one of which necessarily proves commission of the lesser."). Therefore, preventing a peace officer from effecting an arrest is a subset of preventing the officer from performing a lawful duty.

¶ 65     Notably, to commit resisting arrest, a defendant need not actually prevent an officer from effecting an arrest, he must only attempt to do so. Indeed, Snider was unsuccessful in his efforts to prevent his arrest here. The term "attempt" is not defined,[5] but —

---

[5] When the elements of a crime include the term "attempt," the definition of the inchoate offense of criminal attempt, § 18-2-101, C.R.S. 2020, may not apply. *Compare People v. Knox*, 2019 COA 152, ¶ 34 (applying a dictionary definition instead of the definition from section 18-2-101 to the term "attempt" in the crime of attempt

31

under any reasonable definition of the term — an attempt to resist arrest is encompassed within the broader concept contained within the second degree assault statute of an act taken "with intent to prevent a peace officer" from performing a lawful duty.

¶ 66    And third, we turn to the final element of resisting arrest: the use or threatened use of physical force against the peace officer.  To commit second degree assault on a peace officer, one must "intentionally cause[] bodily injury to any person."  § 18-3-203(1)(c).  Obviously, to do so necessarily requires using physical force or violence against the person.  Thus, proof that Snider used or threatened the use of physical force against the peace officer is a subset of proving that he intentionally injured the officer.

¶ 67    In sum, the elements of resisting arrest are "a subset of the elements" of second degree assault on a peace officer.  *See Reyna-*

---

to influence a public servant, § 18-8-306, C.R.S. 2020), *with People v. Tucker*, 232 P.3d 194, 200-01 (Colo. App. 2009) (applying the definition in section 18-2-101 to the same offense).  We are unaware of any statute or case law that defines "attempt" in the context of the crime of resisting arrest.  Nor have the parties addressed this issue.  We need not, and do not, resolve this question here.

*Abarca*, ¶ 77.  Moreover, comparing the above-described elements demonstrates that resisting arrest "contains only elements that are also included in the elements" of second degree assault on a peace officer.  *See id.* at ¶ 78.  Consequently, we conclude that resisting arrest is a lesser included offense of second degree assault on a peace officer.[6]

## 2.    Plain Error

¶ 68    Because Snider's double jeopardy claim was not preserved, we review only for plain error.  *Hagos*, ¶ 14.  Thus, having concluded that resisting arrest is a lesser included offense of second degree assault on a peace officer, we turn to whether the trial court plainly erred by failing to merge Snider's convictions for each offense.  We conclude that it did.

¶ 69    Neither this court nor our supreme court has addressed the specific issue presented here — that is, whether resisting arrest is a lesser included offense of second degree assault on a peace officer.

---

[6] As noted above, Snider also argues that resisting arrest is a lesser included offense under the test set forth in section 18-1-408(5)(c), C.R.S. 2020.  However, because we have already determined that resisting arrest is a lesser included offense by applying the "strict elements test," we need not also conduct an analysis under section 18-1-408(5)(c).

And if an appellate court has not decided an issue, appellate courts usually conclude that a trial court's error in failing to recognize and resolve it was not obvious. *See Conyac*, ¶ 54 (An error is obvious if "it was so clear cut and so obvious that a trial judge should have been able to avoid it without benefit of objection."); *People v. Oliver*, 2020 COA 97, ¶ 67 (an error was not obvious where an appellate court had not yet resolved the issue presented); *People v. Robles*, 302 P.3d 269, 283 (Colo. App. 2011) (Webb, J., specially concurring) (an error was not obvious where it involved an issue of first impression and the jurisprudence in the area was conflicting), *aff'd*, 2013 CO 24.

¶ 70     That being said, in *Reyna-Abarca*, the supreme court nonetheless found plain error under the same circumstances before us. *Reyna-Abarca*, ¶¶ 80-83. There, the court determined, as a matter of first impression, that driving under the influence (DUI) is a lesser included offense of vehicular assault-DUI and vehicular homicide-DUI. *Id.* at ¶ 76. But despite the fact that those issues had never before been addressed by any appellate court, it concluded that the trial courts in four different cases plainly erred by failing to merge the defendants' convictions for DUI into

convictions for vehicular assault-DUI and vehicular homicide-DUI. *Id.* at ¶¶ 80-86.

¶ 71 In doing so, however, the supreme court did not expressly analyze obviousness. *See id.* Instead, it simply stated that "[i]n both our own jurisprudence and in case law nationally, courts have invariably concluded that when a defendant's double jeopardy rights are violated for failure to merge a lesser included offense into a greater offense, such a violation requires a remedy." *Id.* at ¶ 81. And curiously, the supreme court appeared — without explanation — to place the burden on the prosecution to prove the error was *not* plain. *See id.* at ¶ 82 ("[T]he People have presented no compelling arguments as to why any double jeopardy errors that may have been committed here did not rise to the level of plain error."). *Contra Vigil*, 127 P.3d at 929-30 (noting that the defendant bears the burden of persuasion that plain error occurred).

¶ 72 Ultimately, we need not decide whether the error here was obvious due to the lack of a prior clear statement of law regarding the underlying issue before us. The People simply do not make that argument. *See Reyna-Abarca*, ¶ 82 (looking to the prosecution's

arguments in determining whether a double jeopardy violation rises to the level of plain error).

¶ 73    Instead, the People argue that the trial court did not plainly err because it was not obvious that Snider's convictions were factually indistinct.  To that end, the People contend that the actions Snider took to elude Deputy Trail — specifically, running and hiding — could support a resisting arrest charge.  Then, when Snider attacked Deputy Trail after being discovered, they argue, Snider committed a factually distinct second degree assault. However, the People's argument must fail because simply running and hiding cannot establish the elements of resisting arrest.  *See* § 18-8-103(1)(a).

¶ 74    Accordingly, the People have not offered a persuasive argument as to why the trial court's failure to merge Snider's convictions did not rise to the level of plain error.  Therefore, we conclude that the trial court plainly erred, and we thus vacate Snider's resisting arrest conviction.  *See Reyna-Abarca,* ¶¶ 81-82; *People v. Jamison,* 2018 COA 121, ¶ 62.

## VI. Conclusion

¶ 75    We affirm the judgment of conviction for second degree assault on a peace officer and obstruction of a peace officer.  However, we vacate the conviction for resisting arrest, and we remand to the trial court to correct the mittimus to reflect the merger.

JUDGE DAILEY and JUDGE BERGER concur.