SKY FUN 1, INC., a Colorado corporation, Plaintiff–Appellant,

v.

John SCHUTTLOFFEL, Defendant–Appellee.

No. 98CA1209.

Colorado Court of Appeals, Div. II.

March 16, 2000.

Certiorari Granted Sept. 5, 2000.

Peter Schild, Boulder, Colorado, for Plaintiff–Appellant.

Dixon and Snow, P.C., Jerre W. Dixon, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge MARQUEZ.

Plaintiff, Sky Fun 1, Inc. (Sky Fun), appeals the judgment entered in favor of defendant, John Schuttloffel, finding it liable on his counterclaim for defamation. We affirm.

Sky Fun is a Colorado corporation, and William Kitchen (Kitchen) is its president and chief executive officer. Defendant, while employed by Sky Fun as the corporation's pilot, was piloting an airplane with Kitchen aboard when the airplane was struck by lightning. Following this incident, Kitchen informed defendant that Sky Fun was discontinuing his employment.

Defendant then sought employment with another airline (airline). When the airline sought information regarding defendant from Sky Fun, Kitchen provided negative information during telephone conversations with an airline employee.

Sky Fun filed a complaint against defendant for property damage and other financial losses, including lost use of its aircraft allegedly caused by defendant's negligence. In his answer, defendant denied Sky Fun's allegations and counterclaimed alleging, among other things, that plaintiff through its president, had defamed him and that he was entitled to actual and exemplary damages.

After a bench trial, the trial court found for defendant on his defamation claim and awarded him $1.00 in actual damages on that claim and $5,000 in exemplary damages.

I.

Sky Fun contends that the trial court erred by determining that the alleged defamatory telephone calls to the airline by Kitchen were not protected under the Pilot Records Improvement Act 49 U.S.C. § 44936(g)(Supp. III 1997) (the Act). We disagree.

As an initial matter, neither party has presented authorities interpreting the Act, nor has our research disclosed any.

In interpreting statutes, we begin with the relevant language. If congressional will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive. We do not, however, read specific statutory language in isolation. Rather, we must look to the particular statutory language at issue, as well as the language and design of the statute as a whole. *Leonhardt v. Western Sugar Co.*, 160 F.3d 631 (10th Cir.1998); *cf. Thurman v. Tafoya*, 895 P.2d 1050 (Colo.1995).

A.

In pertinent part, 49 U.S.C. § 44936(f)(1)(Supp. III 1997), provides that, before allowing an individual to begin service as a pilot, an employer must "request and receive the following information ... (A) FAA Records ... (B) Air carrier and other records ... (C) National driver register records." Included within "Air carrier and other records" are "records pertaining to the individual that are maintained by the air

carrier or person" concerning: "training, qualifications, proficiency, or professional competence of the individual"; "any disciplinary action taken with respect to the individual that was not subsequently overturned"; and "any release from employment or resignation, termination, or disqualification with respect to employment." 49 U.S.C. § 44936(f)(1)(B)(ii)(Supp. III 1997).

An air carrier making a request for records under 49 U.S.C. § 44936(f)(1) must obtain written consent to the release of those records from the individual that is the subject of the records requested. *See* 49 U.S.C. § 44936(f)(2)(Supp. III 1997).

In relevant part, 49 U.S.C. § 44936(g)(1)(Supp. III 1997) provides that:

No action or proceedings may be brought by or on behalf of an individual who has applied for or is seeking a position with an air carrier as a pilot and who has signed a release from liability, as provided under paragraph (2), against

. . . .

(B) a person who has complied with such a request;

. . . .

in the nature of an action for defamation . . . with respect to the furnishing or use of such records in accordance with subsection (f).

49 U.S.C. § 44936(g)(3)(Supp. III 1997) provides that:

Paragraphs (1) . . . shall not apply with respect to a person who furnishes information in response to a request made under (f)(1), that

(A) the person knows is false; and

(B) was maintained in violation of a criminal statute of the United States.

Here, in the course of applying for a pilot position with the airline, defendant signed a form containing a request/consent for information from a prior employer together with a release from liability, which was sent to Sky Fun. Kitchen filled out the reply form and returned it to the airline.

On the reply form, in response to questions asking if Sky Fun had any record entered within the past five years showing that the defendant was removed from flying status for any performance or professional competency reason and whether Sky Fun had any records entered within the past five years showing that the defendant was the subject of any disciplinary action that was not subsequently overturned, Kitchen marked "yes" and wrote "Call Me!" but did not submit any records.

After receiving the reply form, the pilot training coordinator and crew coordinator (coordinator) of the airline called Kitchen and requested that he forward the relevant documentation. The coordinator testified that Kitchen informed her that Sky Fun did not keep any files, records, or paperwork on defendant. During that conversation and others that followed, Kitchen stated that defendant "wasn't a good pilot," that he "was great in the simulator but he was just not a good pilot," that the airline should not hire him, that he would be a "threat to passengers," that he had numerous safety violations, and that he should not be flying a plane. In response, the coordinator informed Kitchen that she had to have something in writing.

The coordinator later received numerous calls and a facsimile from Sky Fun entitled "Termination Report" stating that defendant was terminated due to his insufficient and dangerous performance on three occasions. In spite of Kitchen's calls, the airline hired defendant.

Following the presentation of evidence, the trial court found that the Termination Report contained materials that fell within the Act, but that the oral statements made by Kitchen did not. It also questioned whether defendant was responsible for the three incidents set forth in the Termination Report.

### B.

■ Sky Fun contends that the telephone calls specifically relating to information requested under the Act deserve similar protection given to records and, therefore, should be immunized from defamation lawsuits. We disagree.

In our view, 49 U.S.C. § 44936(g)(1) covers only records maintained by the air carrier.

49 U.S.C. § 44936(f), which is entitled "Records of employment of pilot applicants," identifies in detail the specific information that must be requested and received before an individual can begin service as a pilot. The information requested lists only records. Here, by contrast, the statements at issue are Kitchen's oral statements.

Consequently, we conclude that the trial court properly found that Kitchen's oral statements do not fall within the purview of the Act.

## II.

Sky Fun next contends that the trial court erred by determining that Kitchen made defamatory telephone calls to the airline which entitled defendant to $1.00 in compensatory damages. We disagree.

### A.

■ To establish a claim for slander *per se*, plaintiff must prove: 1) an oral statement was made by defendant; 2) it was published to a third party; 3) the statement is defamatory of the victim's trade, business, or profession; and 4) no extrinsic evidence is required to show that the statement defames the victim in his or her trade or business practice. *Pittman v. Larson Distributing Co.*, 724 P.2d 1379 (Colo.App.1986).

■ Whether a statement is to be considered slander *per se* is a question of law. *Keohane v. Wilkerson*, 859 P.2d 291 (Colo. App.1993); *aff'd sub. nom, Keohane v. Stewart*, 882 P.2d 1293 (1994).

■ A statement is defamatory if it tends to so harm the reputation of another as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with that person. *Burns v. McGraw-Hill Broadcasting Co.*, 659 P.2d 1351 (Colo.1983); *Arrington v. Palmer*, 971 P.2d 669 (Colo.App.1998).

■ Here, the statements at issue were made orally and were published to a third party, the airline. Additionally, because the statements tend to so harm defendant's reputation as to lower him in the estimation of the airline community, they are defamatory of

the defendant's profession. *See Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo.1988)(statement that employee was "dishonest" was defamatory); *Pittman v. Larson Distributing Co., supra* (statement that employee "wasn't doing as good a job" was defamatory).

Thus, the court did not err in determining that Kitchen made defamatory calls to the airline.

### B.

Sky Fun, however, contends that statements of an employer as to the character of an employee are protected and subject to a qualified privilege. We disagree.

■ Colorado law recognizes a qualified privilege for communications by a party with a legitimate interest to persons having a corresponding interest and communications promoting legitimate individual, group, or public interest. *Burke v. Greene*, 963 P.2d 1119 (Colo.App.1998).

■ However, the common interest privilege is not absolute. The person to whom such an inquiry is addressed cannot abuse the privilege in answering it and it will be lost if the publisher is actuated by express malice. *Pittman v. Larson, supra.*

■ Here, as discussed more fully below, the trial court found that the statements were made with malice. Thus, even if a qualified privilege applies, the privilege was lost.

### C.

Sky Fun also maintains that Kitchen was entitled to express his opinions that his former pilot had placed the corporate airline and human life in jeopardy and that the trial court should have so found. We reject this contention.

■ Whether alleged defamatory language is constitutionally privileged is a question of law, and a reviewing court must review the record *de novo* to insure that the trial court's judgment does not constitute a forbidden intrusion on the field of free ex-

pression. *NBC Subsidiary (KCNC–TV), Inc. v. Living Will Center,* 879 P.2d 6 (Colo. 1994).

 In *Keohane v. Wilkerson, supra,* the supreme court established a two-part inquiry to determine whether a statement is protected. The first inquiry is whether the statement is sufficiently factual to be susceptible of being proved true or false. The second inquiry is whether a reasonable person would conclude that the assertion is one of fact. The factors relevant to the second inquiry are: 1) how the assertion is phrased; 2) the context of the entire statement; and 3) the circumstances surrounding the assertion, including the medium through which the information is disseminated and the audience to whom the statement is directed.

 The determination whether a statement constitutes fact or opinion is a question of law. *Seible v. Denver Post Corp.,* 782 P.2d 805 (Colo.App.1989).

When determining the truth of Kitchen's statements the trial court found that, based on the coordinator's testimony and the frequency of the calls, the calls were not made to protect the safety of the general public. It also found that the calls were not made to protect the integrity of the airline or because of any concern about defendant's skills, but were made in an attempt to preclude the hiring of defendant by the airline. The court stated it did not know whether the statements were true because they were opinion and there was no substantiation. However, it also found that the underlying substantiation was not furnished. Nor were reasonable steps taken to find that the underlying statements were true.

 We conclude that Kitchen's statements that defendant is "not a good pilot" and is a "threat to passengers" are not protected opinion. The coordinator did not state that Kitchen phrased his statements as opinions. Further, these statements are sufficiently factual to be susceptible of being proven false or true and a reasonable person would conclude that the assertions were statements of fact. *See Pittman v. Larson Distributing Co., supra* (statements that plaintiff was fired because he "wasn't doing

as good a job" and "spent too much time in the office and on the telephone" were unqualified statements and not constitutionally protected).

As to context and circumstances, the statements were made by a private non-media individual about a private person. Although the statements concern the defendant's abilities as a pilot, there is evidence that the statements were not made to protect the safety of the flying public, but instead were made in an attempt to preclude defendant's employment with the airline. Consequently, these statements are not matters of public concern. *See Williams v. Continental Airlines, Inc.,* 943 P.2d 10 (Colo.App.1996) (whether a subject is a public concern is a question of law).

Thus, the trial court did not err by entering judgment on defendant's counterclaim and awarding compensatory damages.

### III.

Sky Fun also asserts that the trial court erred by determining that the alleged defamatory telephone calls to the airline were malicious and willful and wanton, entitling defendant to exemplary damages. We disagree.

 An award of exemplary damages is controlled by statute. *Life Care Centers of America, Inc. v. East Hampden Associates Ltd. Partnership,* 903 P.2d 1180 (Colo.App. 1995).

Section 13–21–102(1)(a), C.R.S.1999, provides that:

> In all civil actions in which damages are assessed by a jury for a wrong done to the person or to personal or real property, and the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct, the jury, in addition to the actual damages sustained by such party, may award him reasonable exemplary damages. The amount of such reasonable exemplary damages shall not exceed an amount which is equal to the amount of the actual damages awarded to the injured party.

Willful and wanton conduct means conduct purposefully committed which the actor must

have realized as dangerous, done heedlessly and recklessly, without regard to consequences or of the rights and safety of others, particularly the plaintiff. Section 13–21–102(1)(b), C.R.S.1999.

Exemplary damages are to be awarded only if they are proved beyond a reasonable doubt. *See* § 13–25–127(2), C.R.S.1999. In reviewing an award of exemplary damages, we must determine whether there was sufficient evidence, when viewed in its totality and in the light most supportive of the ruling, to support the findings made by the trier of fact. *Life Care Centers of America, Inc. v. East Hampden Associates Ltd. Partnership, supra.* Here, the coordinator of the airline testified that, after she received the Termination Report, Kitchen called on numerous occasions asking why the airline had hired him. According to the coordinator, "it got to the point that he was calling so many times that [she] didn't want to deal with it anymore."

The trial court found that the calls were made with some malice. It also found that Kitchen intended to stop or alter the career of defendant by his ongoing calls. Therefore, it awarded defendant exemplary damages "not so much because of the extent of any damage, but ... because of the conduct itself and to send a message that that kind of conduct cannot and should not be tolerated by anybody."

We conclude there is ample evidence to support the court's award of exemplary damages to defendant.

### IV.

Sky Fun finally contends that the trial court erred by ignoring § 13–21–102(1)(a) and determining that defendant was entitled to $5,000 in exemplary damages even though his compensatory damages were only $1.00. We disagree.

Section 13–21–102(1)(a) mandates a one-to-one limitation of exemplary damages to actual damages awarded. *Lira v. Davis,* 832 P.2d 240 (Colo.1992).

However, we agree with defendant that, because the limit on exemplary damages of § 13–21–102(1)(a) does not apply in cases tried to the court and because the award was reasonable, the trial court did not abuse its discretion in ordering plaintiff to pay $5,000 for Kitchen's defamation of defendant.

Section 13–21–102(1)(a) provides that "in all civil actions in which damages are assessed by a jury ... the jury ... may award him reasonable exemplary damages. The amount of such reasonable exemplary damages shall not exceed an amount which is equal to the amount of the actual damages awarded to the injured party."

In giving effect to the intent of the General Assembly, courts interpret statutory terms in accordance with their plain and ordinary meaning, and a statute must be considered as a whole. *Thurman v. Tafoya, supra.*

Here, the plain language of § 13–21–102(1)(a) refers only to a jury. Further, subsequent provisions of the statute refer specifically to the court. Section 13–21–102(2), C.R.S.1999, provides: "Notwithstanding the provision of subsection (1) of this section, the court may reduce or disallow the award of exemplary damages." In addition, § 13–21–102(3), C.R.S.1999, states that upon certain conditions, "the court may increase any award of exemplary damages, to a sum not to exceed three times the amount of actual damages."

The terms of § 13–21–102 thus distinguish between provisions applicable to the jury and those applicable to the court. We presume the General Assembly intended that different meanings attached to the two words. *See Lira v. Davis, supra* (by referring to compensatory damages within the same provision first as "damages assessed" and then as "damages awarded" General Assembly intended that different meaning attached to these two terms). Additionally, the statute does not impose a limitation on an award of exemplary damages by the court in a bench trial.

*Lira v. Davis, supra,* upon which plaintiff relies, does not require a different result. There, the award of exemplary damages was by a jury. In *Sprung v. Adcock,* 903 P.2d

1224 (Colo.App.1995), the trial court acting as the trier of fact applied a one-to-one limitation of exemplary damages under § 13–21–102(1)(a). However, the question whether the provisions of § 13–21–102 are limited to an award of exemplary damages by a jury was not addressed in that case.

Consequently, the trial court's award of $5,000 in exemplary damages when his actual damages were only $1.00 does not contravene the statute.

 Further, under the circumstances here, the $5,000 award, is reasonable. The trial court's findings are supported by the record, and the sum awarded is a modest one. The trial court, noting the frequency of the calls, found that plaintiff's statements were made in an attempt to preclude the hiring of defendant or to stop or alter his career. It also found that they were made with malice and indicated that defendant's conduct cannot and should not be tolerated by anybody.

Finally, we do not address the other arguments raised for the first time in Sky Fun's reply brief. *See In re Estate of Stevenson v. Hollywood Bar & Cafe, Inc.*, 832 P.2d 718 (Colo.1992)(arguments not presented to, considered or ruled upon by a trial court may not be raised for the first time on appeal).

Accordingly, the judgment is affirmed.

Judge RULAND and Judge TURSI * concur.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const., art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.1999.